**AMERICAN STATES INSURANCE COMPANY, a corporation, Plaintiff/Respondent,**

v.

**Kenneth VORTHERMS, Mark Ossness, Prest Rack, Inc., R.E. Henges, Inc., f/k/a Henges Associates, Inc. and Ronald E. Henges, Defendants/Appellants.**

No. ED 75560.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 7, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 10, 1999.

Application to Transfer Denied Dec. 21, 1999.

Ira M. Potter, Edward J. Miller, Jr., St. Louis, for appellant.

John H. Marshall, St. Louis, for respondent.

KENT E. KAROHL, Judge.

Defendants purchased from American States Insurance Company (American States) a commercial general liability policy and an umbrella policy, on the basis of

which defendants tendered the defense of a lawsuit pending in the Federal District Court for the Eastern District of Missouri, brought against them by Prest Rack, Inc. (Prest). American States declined coverage and filed a petition seeking a declaratory judgment that it has no contractual duty to defend and indemnify defendants in the federal court lawsuit. Defendants filed a counter-claim seeking a declaratory judgment that American States has a duty to defend and indemnify defendants on the claims made by Prest. The requests for declaratory judgment were submitted to the trial court on the basis of a joint stipulation of facts for a determination on the pleadings, a stipulation, and memoranda of law submitted by the parties. The trial court ruled American States has no duty to defend, indemnify or reimburse defendants for the allegations contained in Prest's federal complaint or the expenses and costs incurred. Defendants' appeal presents matters of first impression in Missouri. They argue the policies offer coverage for "advertising injury" and the trial court erred as a matter of law in failing to give that term its plain and ordinary meaning, which would result in a declaration of coverage. However, in *Coverage B–1(b)(2)*, the policy states that advertising injury liability applies when such injury is "caused by an offense committed in the course of advertising [insured's] goods, products or services." Advertising injury, as defined in *Section v. – Definitions,* is an offense arising out of misappropriation of advertising or style of doing business or infringement of copyright title or slogan. Defendants argue in two additional points that the court erred in concluding that two exclusions in the policy would prohibit coverage if Prest's allegations did state a cause of action for advertising injury. Particularly, in point two defendants argue that the court erred in finding that allegations of "misappropriation" in the federal case implicate a crimi-

nal act exclusion in the policy, and allegations of a breach of contract implicate the breach of contract exclusion.

## Background

Prior to 1993, Henges Associates, Inc. (Associates) and Prest were business competitors. Prest is a major manufacturer of selective storage racks, drive-ins, drive-thrus, cantilevers and mezzanines. Defendant Ken Vortherms was Prest's employee from 1984 until 1993 when he became an employee of Associates. Defendant Mark Ossness was also an employee of Prest until he became an employee of Associates in 1993.[1] In 1996, Associates sold its assets to Henges Manufacturing, L.L.C (Henges). Vortherms and Ossness then became employees of Henges.

In a federal lawsuit, Prest alleged that it developed a unique and valuable computer software program, entitled "PrestPlan," which was placed into operation in 1991. Prior to the development of PrestPlan, estimation of mezzanines for bid submission was a slow, manual process. PrestPlan automated the estimates and had the capacity to generate plan views or read already existing drawings and provide a price quote in a reduced amount of time. PrestPlan contains Prest's product costs, profit margins, discounting methods and is a marketing tool. Prest alleged it provided a substantial and competitive advantage in the market place, and preservation of the secrecy of the confidential business information was an asset. Prest alleged that its employees were required to execute "Trade Secret, Confidentiality, Assignment of Inventions and Non–Competition Agreement[s]." A copy of such agreement, marked as exhibit "A," was attached to the petition but it is a form with unfilled blanks, not a Vortherm or Ossness agreement. Prest also alleged its employees were bound by provisions in its Policy & Procedure Manual, which con-

---

1. Plaintiffs/Appellants Ken Vortherms and Mark Ossness are sometimes referred to as Ken Votherms and Mark Osness. We adopt the former spellings of both, as set forth by the notice of appeal.

tained provisions for protecting confidential business information including, but not limited to, financial, market strategies and new materials. Prest alleged that defendant Henges directly competes with Prest in the manufacture of mezzanines.

In 1996, the principal shareholder of Prest learned that Henges was providing price quotes using "Prest's Trade Secret PrestPlan." Prest alleged that defendants: (1) engaged in and would continue to engage in removal of Prest's information, Prest's documents, Prest's customer lists, Prest's business records, and the use of PrestPlan; and, (2) converted the same to their personal use and to their own advantage and that their acts were contrary to the terms and conditions of the Trade Secret, Confidentiality, Assignment of Inventions and Non–Competition Agreement and other Prest policies and guidelines.

Prest requested relief in ten counts. Count I sought an injunction against Henges, Kevin O'Meara,[2] Vortherms, Ossness, Ronald E. Henges and Associates. Counts II and III seek damages against defendants Vortherms and Ossness for breach of a Trade Secret, Confidentiality, Assignment of Inventions, and Non–Competition Agreement and breach of fiduciary duties. Count IV seeks damages on a conspiracy theory against various defendants. The federal complaint also alleges misappropriation of trade secrets (count V), conversion (count VI), unfair competition (count VII), intentional interference with economic advantage (count VIII), an accounting (count IX) and punitive damages (count X). The trial court appropriately observed that the causes of action in the federal complaint all allege intentional conduct. Prest did not plead accident, unintentional commission or omission, a non-fortuitous event or accident that was unintended or involuntary.

**2.** Some defendants are insured by Amerisure Insurance Company and are parties to a separate declaratory judgment action, which is presently before this court on appeal and in-

*Policy Provisions*

The relevant policy provisions to the dispute of the parties is as follows:

1. Insuring Agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.

 \* \* \*

 b. This insurance applies to:
 (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
 (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

 but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions.
 This insurance does not apply to:
 a. "Personal injury" or "advertising injury"

 \* \* \*

 (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
 (3) Arising out of the willful violation of a penal statute or ordinance

volves similar issues. *See, Henges Manufacturing et al. v. Amerisure Ins. Co.,* 5 S.W.3d 544 (Mo.App.E.D. 1999).

committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

* * *

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

* * *

Section V – Definitions

1. "Advertising injury" means injury arising out of one or more of the following offenses:

* * *

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

* * *

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

*Findings, Conclusions and Judgment of the Trial Court*

The trial court reached the following conclusions:

The underlying action does not fall within the scope of coverage afforded under the primary or umbrella policies for advertising injury. The operative facts have no relationship to advertising. Not only does the underlying action fail to identify a predicate offense for which coverage is afforded, its allegations fail to support the existence of a causal relationship between any alleged offense and Prest's alleged injuries in the underlying action.

In addition, coverage is excluded in the American States policy since the underlying action alleges a conspiracy to steal and use the software for estimating, which theft is excluded as a willful violation of a penal statute for stealing by or with the knowledge or consent of the insured.

Additionally, the allegations in the underlying complaint have nothing to do with the "trade dress" of Prest Rack, which is necessary for advertising injury coverage. There is no allegation by Prest Rack that the [c]ompany attempted to mimic the outward appearance of Prest Rack. For example, a part of Nike's trade dress is its logo, "swoosh" or stylized checkmark seen on Nike shoes, clothing and products. Today, when an observant consumer sees the "swoosh" on clothing, shoes or other consumer items, the consumer immediately knows that the product is Nike's. Here, the "insureds" are quite simply alleged to have stolen and used tangible personal property belonging to Prest Rack, to wit: a computer software program used for estimating.

**542**

Finally, coverage for any alleged advertising injury fails since the underlying action alleges breach of contract which falls squarely within the breach of contract exclusion.

In support of these conclusions, the court made extensive findings of fact. It considered the issue in the underlying federal action to be claims concerning customer lists and a computer software program that Prest developed prior to 1993. It found Prest pleaded that defendants conspired to steal and misappropriate the 1993 Prest Mezzanine System. This was accomplished by requesting Vortherms and Ossness to install the system onto Associate's computers. Associates used the system from September 1993 until the sale of its assets in January 1996. The policy provides coverage for advertising injury caused by "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan." What is alleged is the voluntary and intentional conspiracy to steal and the stealing of one's tangible personal property for another's unauthorized use to estimate mezzanine jobs. The federal complaint does not allege misappropriation of advertising ideas or misappropriation of style of doing business "in the course of advertising," as required by the policy.

The trial court recognized that this is a case of first impression in Missouri. It found that the substantial weight of authority holds that advertising injury coverage does not apply to the misappropriation of computer software or similar intellectual property. It relied on *Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983 (10th Cir.1998) and *GAF Sales & Serv., Inc. v. Hastings Mut. Ins.*, 224 Mich.App. 259, 568 N.W.2d 165 (1997). "These cases hold that an insured's wrongful taking of software or other products developed by a third party does not constitute misappropriation of style of doing business or misappropriation of advertising ideas within the meaning of a liability policy." *Novell, Inc.* contains an observation that the phrase "style of doing business" unambiguously refers to a company's comprehensive manner of operating its business. *Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 987 (10th Cir.1998).

On the definition of advertising, the court relied upon numerous cases as authority for holding "advertising" involves the widespread distribution of promotional material to the public at large, particularly:

Playboy [Enter.], Inc. v. St. Paul Fire & Marine Ins. Co., 769 F.2d 425, 429 (7th Cir.1985); Smartfoods, [Inc. v. Northbrook Prop. & Cas.,] 35 Mass.App.Ct. 239, 618 N.E.2d [1365] at 1368 [ (Mass.App.1993) ] (advertising is a public announcement to proclaim the qualities of a product or point of view); Fox Chemical v. Great Am. Ins., 264 N.W.2d 385, 386 (Minn.1978) (advertising contemplates public or widespread distribution of material); GAF [Sales & Serv., Inc. v. Hastings Mut. Ins.], 568 N.W.2d [165] at 167 [Mich.App. 1997] (advertising requires widespread promotional activities directed to the public at large); International Ins. v. Florists Mut. Ins., 201 Ill.App.3d 428, 147 Ill.Dec. 7, 559 N.E.2d 7, 10 (1990); Bank of the West [v. Superior Court], 10 Cal.Rptr.2d at 553 n. 10 [833 P.2d 545 (Cal.1992) ].

\* \* \*

Select Design Ltd. v. Union Mut. Fire Ins. Co., 165 Vt. 69, 674 A.2d 798 (1996) held that the alleged solicitation of customers from the claimant's customer list by the claimant's former employee upon his leaving the claimant and joining the insured competitor was not advertising within the meaning of the advertising injury coverage of the insured's policy.

\* \* \*

In *Monumental Life Ins. Co. v. USF & G*, 94 Md.App. 505, 617 A.2d 1163 (1993), ... improper individual solicitation of a competitor's customers ... [as a] one-on-one solicitation ... [is] not advertis-

ing, even though these solicitations were widespread[.] *[Id. at 1164, 1173].*

\* \* \*

Similarly, in *Smartfoods, Inc. v. Northbrook Prop. & Cas.,* 35 Mass.App.Ct. 239, 618 N.E.2d 1365 (1993) . . . [soliciting business from a particular company] . . . "does not conform to the ordinary notions of calling to the attention of the public the merits of a product." *Smartfoods,* 618 N.E.2d at 1368.

 The trial court concluded that the underlying federal action does not allege any widespread promotional activity by defendants. It, therefore, was not within the coverage for advertising injury. The court also found there was no required nexus between the wrongs Prest alleged in the federal lawsuit and any of defendants' advertising activities. Advertising injuries must be caused by the insured's advertising activity. *Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 94 F.3d 1219, 1221 (9th Cir.1996). The court concluded:

> The alleged misappropriation of [Prest's] software program in 1993, however, has no connection with any advertising activity subsequently undertaken by [Associates], its officers and/or its employees. There was no advertising activity. Equally as significant, the underlying action omits any allegation that Prest was harmed by any advertising undertaken by [Associates].

The trial court found that two exclusions applied, assuming the allegations in the underlying action alleged an advertising injury. It found that the federal complaint alleged breach of contract and applied an exclusion for advertising injury arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract. Since all of the damages claimed by Prest were traceable to the wrongful acts of taking and disclosure of PrestPlan, all of the damages were traceable to the alleged misappropriation, and the exclusion applied to all counts in the federal complaint.

### Decision

We conclude the stipulated facts support the trial court's findings of fact. Our review is limited to a determination of "whether the trial court drew the proper legal conclusions from the facts stipulated." *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo. banc 1979).

 We conclude that the authorities relied on by the trial court support its conclusion that the policy issued by American States does not afford coverage for any injury alleged in the federal complaint filed by Prest. Coverage for "advertising injury" requires defendants to offer facts to support a finding of three elements: (1) an advertising injury as defined in the policy; (2) a course of advertising; and, (3) proof of a causal relationship between the first and second elements. *See GAF Sales & Serv. Inc.,* 568 N.W.2d at 167. An insured must bring itself within the terms of the policy and must carry the burden of offering substantial evidence that the underlying claim is covered by the policy. *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.,* 558 S.W.2d 255, 259 (Mo.App. 1977). Generally, the cases relied on by the trial court analyzed the question of the meaning of advertising injury in terms of insured's "style of doing business." That term has been held to unambiguously refer to the insureds comprehensive manner of operating its business. *Novell, Inc.,* 141 F.3d at 987; *Applied Bolting Tech. Prods., Inc. v. USF & G,* 942 F.Supp. 1029, 1034 (E.D.Pa.1996); *Fluoroware, Inc. v. Chubb Group of Ins. Cos.,* 545 N.W.2d 678, 682–83 (Minn.App.1996). An "advertising idea" implicates one calling public attention to a product or business, particularly by reference to its desirable qualities so as to increase sales or patronage. Thus, a misappropriation of an advertising idea involves the wrongful taking of another's manner of advertising. *See, e.g., Fluoroware, Inc.,* 545 N.W.2d at 682.

Prest did not allege in the federal complaint that defendants stole ideas for promoting their services in building mezzanines or for bringing public attention to its mezzanine construction business. Assuming, arguendo, that the allegations in the federal complaint could be supported by substantial and credible evidence, there would still be no evidence that prospective customers or the public generally would ever know that defendants were using the software taken from Prest. Accordingly, the federal complaint does not state a cause of action for advertising injury. *See, e.g., Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 429 (7th Cir.1985); *International Ins. Co. v. Florists Mut. Ins. Co.,* 201 Ill.App.3d 428, 147 Ill.Dec. 7, 559 N.E.2d 7, 10 (1990); *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 553 (1992); *Smartfoods, Inc. v. Northbrook Prop. & Cas.,* 35 Mass.App.Ct. 239, 618 N.E.2d 1365, 1368 (1993) (advertising is a public announcement to proclaim the qualities of a product or point of view); *GAF Sales & Serv., Inc.,* 568 N.W.2d at 167 (advertising requires widespread promotional activities directed to the public at large); *Fox Chemical Co., Inc. v. Great Am. Ins. Co.,* 264 N.W.2d 385, 386 (Minn. 1978) (advertising contemplates public or widespread distribution of material).

We need not reach and do not decide the alternative conclusions of the trial court that one or more exclusions in the policy would apply if there were coverage. We conclude the trial court did not err in declaring that American States' policies do not afford coverage for the defense or indemnification of loss occasioned by the Prest complaint filed in the federal court.

WILLIAM H. CRANDALL, Jr., P.J. and MARY K. HOFF, J. concur.