**KIRK KING, KING CONSTRUCTION, INC., and American Family Mutual Insurance Company, Respondent,**

v.

**CONTINENTAL WESTERN INSURANCE COMPANY, Appellant.**

**No. WD 61555.**

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

Motion for Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

Brian K. Francka, Jefferson City, MO, for appellant.

Mark A. Ludwig, Jefferson City, MO, for respondent.

Before ELLIS, C.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

Continental Western Insurance Company appeals from the judgment of the trial court holding that Continental had a duty to defend Kirk King and King Construction, Inc. (collectively "King"), in a copyright-infringement suit filed against the two. Continental insured King under a commercial general liability policy. Plaintiff–Respondent King, a custom homebuilder was sued for using a copyrighted house plan as its own. The Continental policy covers "advertising injuries" caused by an offense (infringement of copyright) committed in the course of advertising the insured's products. This case pivots on whether the placing of a sign bearing the builder's name next to a construction site of the builder constitutes advertising within the meaning of the insurance policy. Continental argues that the trial court erred in concluding that it had a duty *to defend* and *to indemnify* King and that American Family Mutual Insurance Com-

pany (American Family), the predecessor insurer of King, must split the defense and indemnification costs. This court rejects both points.

## I. FACTS

William Wiley sued Kirk King and King Construction, Inc. (and other parties not important to this appeal) for copyright infringement in violation of 17 U.S.C. §§ 101 *et seq.* Wiley alleged that King had "knowingly, intentionally and willfully copied Wiley's [copyrighted house design] and built a home, which is nearly identical to the copyrighted home." The petition made no mention of damages stemming from the advertising or sale of the copyright infringing home or that King had used Wiley's plans in his (King's) advertising. In the front lawn of the allegedly copyright-infringing home, King had placed a two foot-by-three foot sign with the name of King Construction Company on it; the sign also held the building permits.

Twice, King tendered the defense of the case to appellant Continental, which had issued King a comprehensive general liability policy that covered some forms of "advertising injury" and "personal injury." Continental refused both tenders. King then tendered the defense to his other insurance company, American Family, which had issued King a policy with an "other insurance" clause identical to one in the Continental policy. American Family agreed to defend and indemnify King in the Wiley suit, though under a reservation of rights.

Wiley eventually settled with King and American Family. Under the settlement agreement, King admitted infringing Wiley's copyright by building the home in question and agreed to pay Wiley $25,000. American Family agreed to pay, and later paid, $7,500 of the $25,000 and $3,661.25 for all of King's legal expenses. The settlement agreement became a consent judgment, in which the court also permanently enjoined King from "directly or indirectly, employing, copying, duplicating, reproducing, making any works of, distributing copies of or otherwise using any of [Wiley's house design] or any derivations thereof."

After Continental refused to indemnify King or American Family or to reimburse American Family[1] for paying King's legal expenses, King and American Family filed this suit against Continental for breach of contract and vexatious refusal to provide insurance coverage, seeking damages of $28,661.25, plus statutory penalties, attorneys' fees, and costs. In their petition, King and American Family claimed that Continental had a duty to defend and indemnify King because "the building of a home and the placement of a sign with the builder's name on it in the yard of such home is a form of advertising that builder's product and services."

The policy here did not define "advertising." At the bench trial, the only evidence as to advertising by contractors such as King, came from respondent's witness, Charles Schaefer, a retired homebuilder with forty years experience in the construction industry, who testified that the most effective way for a home building contractor to advertise was to place signs on job sites identifying the contractor.

Q. How did you advertise on your jobs?

A. I put up signs on the jobs, and then weekends people would normally view our homes and see what we

---

1. A time line of the events leading up to this appeal appears in the Appendix to this opinion.

had, our guts in them and everything, how they was built. And probably most of my calls would come in on Monday, in the first part of the week, because that's the best advertisement I could see that we had was to contact the people and they could see what you had out there.

Q. So they could see the quality of the materials, the quality of the home, and then they'd call you?

A. Right.

Q. And you say on Mondays is when you got most of your calls?

A. Mondays and Tuesdays mostly.

Q. And do you know why that is?

A. Weekends they would tour, usually go out and look. You know, if they was intending to build a house, they'd usually look up a contractor and go from there.

Evidence was admitted showing that King had placed a two-foot-by-three-foot sign outside the job site, which had the name of King Construction Company on it, before construction had been completed and that the sign also held building permits. (The language of the King–Continental insurance policy will be presented in the analysis section. *See infra.*) The trial court entered judgment in favor of the plaintiffs, though finding that Continental's refusal to defend or indemnify King was not vexatious. The court reasoned as follows:

The undisputed evidence is that builders advertise their services and products by building a quality home and placing a sign identifying them as the builder in the yard for the general public to see. While this is not exclusively advertising, there is no requirement in the defendant's policy that the activity that constitutes advertising be exclusively advertising. The undisputed testimony was that this type of advertising is very effective because potential customers can see the quality of the construction and materials, and that many potential customers contact builders after seeing the homes they are building. The defendant does not define advertising in its policy, which it could have done; the common definition of advertising includes "to call public attention to" which King did by placing a sign in the yard of homes he was building. The sign alone is not the advertising; the sign alone has no meaning or impact without the house since the house itself allows potential customers to see the quality of the goods and services provided by the builder. It is the house itself [that] constitutes the copyright infringement, and the house is part of the advertising; therefore, there is causal relationship between the damage alleged (copyright infringement) and the advertising activity.

## II. STANDARD OF REVIEW

The judgment in a court-tried case must be affirmed unless it is against the weight of the evidence, it was unsupported by sufficient evidence, or the trial court either misapplied or misconstrued the applicable law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All the evidence and reasonable inferences therefrom is reviewed in the light most favorable to the judgment, and all evidence and inferences to the contrary are disregarded. *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 8 (Mo.App.2000).

## III. ANALYSIS

### A.

The major issue in this case is whether the trial court misconstrued King's insurance policy as requiring Continental to defend King in the Wiley lawsuit and to indemnify him for any resulting liability.

The facts present in this case constitute a case of first impression in Missouri. Continental argues that the trial court misapplied the policy language because (1) the injury in this case (copyright infringement) was not caused by an offense committed in the course of advertising King's goods, products, or services, and (2) the home building (copyright-infringing act) was not caused by King's advertising.

■ An insurance company has a duty to defend an insured when the insured is exposed to potential liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). To extricate itself from a duty to defend the insured, the insurance company must prove that there is no possibility of coverage. *Id.* Coverage is principally determined by comparing the language of the insurance policy with the allegations in the pleadings. *Id.* "However, even though the pleadings do not show coverage, where known or reasonably ascertainable facts become available that show coverage[,] the duty to defend devolves upon the insurer." JOHN ALAN APPLEMAN, 7C INSURANCE LAW AND PRACTICE § 4684.01 (Walter F. Berdal, ed.1979). *Accord Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. banc 1968). Insurance coverage is a question of law. *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. banc 2002). "Where there is no duty to defend, there is no duty to indemnify." *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo.App. 2002). Where reasonably possible, an insurance policy will be interpreted as affording coverage. *Weathers v. Royal Indem. Co.*, 577 S.W.2d 623, 626 (Mo. banc 1979).

■ In its policy with King, Continental agreed to indemnify and defend King in any suits seeking damages for "personal injury" or " 'advertising injury' caused by an offense committed in the course of advertising your goods, products or services...." "Advertising injury" was defined as "an injury arising of one of the following offenses: ... (d) Infringement of copyright...." Continental accordingly had a duty to defend, and perhaps to indemnify, if the Wiley petition alleged that: (1) there was an advertising injury as defined in the policy; (2) the advertising injury was caused by an offense; and (3) that offense was committed in the course of advertising King's goods, products, or services.[2] *See Am. States Ins. Co. v. Vortherms*, 5 S.W.3d 538, 543 (Mo.App.1999) (interpreting identical advertising injury policy language); *GRE Ins. Group/Tower Ins. Co. v. Complete Music, Inc.*, 271 F.3d 711, 713 (8th Cir.2001) ("Where [copyright] infringement is the offense, the policy language would appear to require that the infringement occur during *the course of advertising*.") (emphasis in the original) (interpreting identical policy language).

King has satisfied all three conditions. There was an advertising injury as defined in the policy; Wiley's petition alleged that King injured him by committing an offense, namely, copyright infringement; and the suit posited harm caused by various acts of copyright infringement (copying the housing plans, building the house based on the plans, and selling the copy-

**2.** According to the rule of the last antecedent, the phrase "committed in the course of advertising ..." modifies the word "offense" (e.g., copyright infringement), not "advertising injury" (i.e., injury read: damages—arising out of copyright infringement). *Blue Cross & Blue Shield of Kansas City, Inc. v. Nixon*, 26 S.W.3d 218, 233–34 (Mo.App.2000).

right-infringing house), that is, offenses under the policy.

The key question is whether condition three was satisfied. It was. One alleged offense, building a home based on Wiley's copyrighted housing plans, was done "in the course of," i.e., "as part of," King's advertising. (While "in the course of" can mean "at the same time or times during," Webster's Revised Unabridged Dictionary (1996)); *see also* 2C Oxford English Dictionary 1088 (1933), it would be unreasonable to interpret it that way, thus making *contra proferentem* inapposite. *Cf. State Farm Mut. Auto. Ins. Co. v. Esswein,* 43 S.W.3d 833, 842 (Mo.App.2000) (*contra proferentem* applies to ambiguous insurance terms) & *Am. Family Mut. Ins. Co. v. Tickle,* 99 S.W.3d 25, 29 (Mo.App.2003) ("An ambiguity exists when the language in a policy is reasonably and fairly open to different constructions.") (citing *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992)). If this court were to read "in the course of" as meaning "at the same time or times during," so long as a building constructor did any advertising, *via* radio, TV or print, when it committed its copyright infringing acts—and few businesses do not advertise—there would be coverage. In effect, "advertising injury" policies would be converted into "copyright infringement" policies. "Advertising" means "[t]he action of drawing the public's attention to something to promote its sale," Black's Law Dictionary 55 (7th ed.1999), and as the respondent's expert, Charles Schaefer, had testified, one of the best ways to advertise the goods and services of a building constructor is to put signs outside of construction sites so that potential customers can tie the quality of workmanship to the builder. That the sign was present throughout the construction of the house can reasonably be inferred from the fact that the sign held the building permits. Even if the sign had been on site during part of the construction, there was clearly a duty to defend. It is possible that Schaefer was referring to putting a sign outside a completed home, but this case involved advertising during construction, so one could reasonably infer from his testimony that his testimony was broader than that.

■ Continental's claim that posting a sign outside a home in the process of construction cannot be considered advertising because it cannot create "widespread distribution of promotional material to the public at large"—a necessary condition of advertising, according to the Eastern District, *see Vortherms,* 5 S.W.3d at 542—is not apropos to the facts here. The "widespread distribution" requirement in *Vortherms* definition presupposes flyers, mailers, or other such mass circulation items, but the class of "advertising," particularly when applied to the facts here, includes much more. A contractor putting its sign up next to the home it is building, without stating so, is placing it there to attract the attention of potential homebuyers. A highway billboard is a common form of advertising though, being stationary, it cannot be distributed. King's sign is analogous to a highway billboard sign: Both are designed to garner business and both aim their messages at the public.

■ Continental's contention that there can be no coverage unless the advertising *activities* caused the advertising *injury* is true but misleading. It is the offense that must cause the advertising injury. The alleged offense here—constructing a home in violation of Wiley's copyright—was committed "in the course of advertising," though in isolation—that is, by itself—home construction is not advertising. It was, as the expert testified, a necessary part of King's advertising. The primary purpose of building the home may

not have been to make profits from advertising it, but rather from selling it; but the policy does not limit coverage to cases where the offense predominantly functions as advertising. Continental's next counter-argument—that Continental had a duty to defend King only if King had advertised Wiley's housing plans in violation of Wiley's copyright—fares no better. While the palming off of another's copyrighted ideas in advertising probably constitutes advertising injury under King's policy, so too is the use of another's copyrighted housing plans to build a home. It is possible, of course, that Wiley will never recover actual damages stemming from the mere *construction* of the infringing home.

It is true that the evidence of *when* the King sign was placed on the job site (before, during, or after construction) apparently did not come out until trial. None of the letters King sent to Continental seeking coverage and nothing in King's petition claims the sign was on the lot during the building of the home. But Continental never moved to dismiss the King petition for failing to state the ultimate facts necessary to find coverage. Nor has Continental argued on appeal that King's failure to apprise it of this significant information estopped King from claiming there was coverage. Besides, it is reasonable to infer that Continental's investigation of the circumstances surrounding the Wiley suit would have revealed that King kept the sign outside the site throughout construction.

■ Continental next argues that it had no duty to defend or indemnify King because Wiley's suit was based upon King's construction of a home, not on the advertisement of the copyrighted plans, and because Wiley did not pray for damages stemming from advertising the home. As has been shown, Continental's argu-

ment overlooks the fact that the home construction in this case was part of the advertising. That Wiley did not explicitly seek recovery for the damages stemming from the home's role as advertising—damages of lost profits, which are difficult to prove with reasonable certainty, the requisite level of proof, *Ozark Employment Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 897 (Mo.App.2002)—did not obviate coverage. Perhaps Wiley could not have recovered actual damages stemming from the mere *construction* of the infringing home. But (1) even if Wiley could not have proved actual damages from the construction of the home itself, he might have recovered statutory damages had he not settled his case, 17 U.S.C. § 504(c)(1); *but cf IDG, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 924 (10th Cir.2001), and (2) the bare possibility of an insured not being found liable does not preclude a duty to defend. *McCormick Baron*, 989 S.W.2d at 170. Regarding the indemnification aspect of Continental's argument: Since the settlement agreement between Wiley and King required King to pay Wiley damages for building a home in violation of Wiley's copyright, Continental had a duty to indemnify King for these costs. (Continental has not argued that the amount King agreed to pay exceeded any damages to Wiley from the construction of the copyright-infringing home.)

*Construction Management Systems Inc. v. Assurance Co. of America* does not help Continental. 135 Idaho 680, 23 P.3d 142, 146 (2001). In that case, the insurance company had issued a policy to a house builder with the same language as in King's. *Id.* at 144. The builder was sued for infringing upon another's architectural work and drawings. *Id.* at 146. The builder claimed "that building the homes, placing them on the market, and having real estate brokers promote them is suffi-

cient to give rise to the potential that the copyright infringement activities were related to or connected with advertising." *Id.* at 145. The trial court and the Supreme Court of Idaho disagreed. *Id.* at 146–47. *Construction Management Systems* is factually distinct; the advertising there followed the completion of the homes, whereas the advertising here accompanied the home construction. In addition, it is unclear whether *Construction Management Systems* is good law. As one commentator has noted:

> The court appeared to narrowly confine its analysis to the precise facts of the pleading, i.e., a complaint allegations rule analysis, which does not appear in accord with Idaho law. It also fails to recognize that liability for copyright infringement may be accomplished by a mere act of distribution through promotional activity that can itself involve a casual nexus to advertising. The insured failed to argue other applicable decisions that might have supported a result in its favor. Nor did it call to attention specific facts relating to promotional advertising that would create liability for direct copyright infringement.

David A. Gauntlett, *Recent Developments in Intellectual Property Law,* 37 TORT & INS. L.J. 543, 550 (Winter 2002).

The holding in this case is quite narrow. This court does not hold that the construction of a home is, in and of itself, necessarily advertising. Many manufacturing processes, for instance, are safeguarded from view by the public and, hence, aren't part of advertising. This court does not hold that the offense of copyright infringement itself creates coverage. This court does not hold that Continental had a duty to defend King based upon the sign being placed *after* completion of the home, a proposition that has been rejected time

and again. *See, e.g., Microtec Research, Inc. v. Nationwide Mut. Ins. Co.,* 40 F.3d 968, 971 (9th Cir.1994) ("If the tortfeasor does some wrongful act and then advertises it, harm caused by the wrongful act alone is not within the scope of the term advertising injury."); *Green Mach. Corp. v. Zurich–Am. Ins. Group,* 313 F.3d 837, 840 (3d 2002).

■ At the outset of the opinion, the court noted established law in interpreting insurance contracts as pointing toward construing ambiguities in the language in favor of affording coverage. An insurance company can tailor the language of its policy to clearly define the events or occurrences it wants to cover. As the trial court pointed out in the ruling, Continental knew King's business was custom homebuilding, and "[h]ad it wanted to limit the scope of the advertising injury coverage, it could have chose to define advertising or otherwise limited its coverage. It did not do so and cannot now complain that it did not intend to provide the coverage its policy provides on its face." Had Continental investigated the facts after the filing of the claim accepted the defense of its insured, it would have discovered the infringement of the plans coupled with the placement of the insured's sign in the yard during the construction placed the Wiley claim within the coverage of the policy as written.

## B.

■ Continental's second point presents a novel attempt to reduce the portion of the judgment in favor of American Family by one half. Appellant's theory is basically that since both insurer's policies were similar and had "other insurance" clauses (so that upon a court's determination, the King settlement and attorney's fees were covered under Continental's policy), then each company should bear half the claim. Continental made an oblique presentation

of this argument in its answer to the respondents' petition; however, it presented no evidence to the trial court that would have required such a conclusion in the judgment. Because this argument was not presented at the trial level, it was not preserved. *Howsmon v. Howsmon,* 77 S.W.3d 752, 757 (Mo.App.2002). The court declines to exercise plain error review, Rule 84.13(c), but, nevertheless, makes the following observations.

■ Continental's argument is, without merit. As the timeline indicates, American's insurance policy naturally expired at the end of January of 1998, approximately six months before the copyright violation charged in Wiley's lawsuit began. American, thus, had no duty to defend King; and *a fortiori* it had no duty to split the indemnification and defense costs with Continental. Since American had no obligation to indemnify or defend King, arguably Continental was liable for the entire defense and indemnification expenses incurred by American under a theory of equitable contribution. *See Auto. Club Inter–Ins. Exch., By and Through Club Exch. Corp. v. Farmers Ins. Co.,* 646 S.W.2d 838, 840 (Mo.App.1982) ("Contribution is an equitable duty rather than contractual and is enforceable where one party is required to pay more than his share of *common liability* which several persons are obligated to discharge.") (emphasis added). This court does not pass on the propriety of the trial court's tacit application of equitable contribution in this case, but notes that Continental has not argued the issue, either in the trial court or on appeal.

The evidence in this case was clear—Continental, from the very beginning, denied coverage and defense of King's claim. American Family's representative testified that when the company received the request from King and when they gleaned from the Wiley U.S. District Court petition that the alleged infringement started in April 1997 (during the period when the American policy was in effect), the company decided to afford King a defense with a reservation of right. At the time American entered the case, it was not clear when, or even if, the advertisement provision would kick in and result in possible coverage. Continental fails to point to any evidence in the record supporting why the trial court could should have awarded American only half of what it had expended. Continental provides this court no compelling legal reason why now, after American stepped in and provided legal representation and expended money to settle the case underlying the claim, Continental should only pay half the loss and expense necessary to settle a claim for which it was totally responsible. The six reasons Continental gave in its original denial were found to be incorrect. The facts at trial clearly showed the construction (August 1998) and sign upon completion of the project that utilized the Wiley plans occurred long after the American policy had expired and solely within the coverage of the appellants policy that commenced in February 1998 and was renewed in February 1999. The point is denied.

The judgment of the trial court is affirmed.

All concur.

APPENDIX

| DATE | DESCRIPTION |
| --- | --- |
| Nov. 1996 | King, using Wiley's plans, builds on Lot 698. Wiley files suit in U.S. District Court for infringement. King's insurance (same policy language) is with American Family. |

| | |
|---|---|
| Jan. 1997 | Start of last year of King's coverage with American. |
| Apr. 1997 | Wiley dismisses suit involving Lot 698. |
| Jan. 31, 1998 | American Family policy ends. |
| Feb. 1998 | Continental policy begins. |
| Aug. 1998 | King contracts with Craig's to build their house in same subdivision (Lot 478). Construction starts using Wiley plans. King's sign is placed by construction site. |
| Feb. 1999 | Continental policy renewed. |
| June 1999 | Construction on Craig's home, Lot 478, completed. King construction sign still on premises. |
| Jan. 2000 | Wiley sues King in U.S. District Court for infringement on Lot 478, seeking $150,000 in damages. (Petition also refers to 1996 improper use of Wiley copyright). |
| March 2000 | King presents claim to Continental which denies coverage under policy language based on six reasons (no "occurrence;" no damages; intentional acts of insured; copyright infringement covered only if "advertising" of product; injunctions not covered; and "willful" act of insured. American Family then agrees to provide King a with reservation of rights. |
| June 2000 | Continental again denies coverage—refused to defend. |
| Aug. 2000 | King (and American Family) settle with Wiley (King pays $17,500 and American Family $7,500 = $3,661 in attorney's fees). |
| Jan. 2001 | King and American Family file this suit against Continental for $28,881 plus vexatious refusal damages, interest and attorney's fees. Trial court awards damages and interest but denies vexatious refusal and attorney's fees. This appeal by Continental follows. |