# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 14-3411

———————————————————

Wolfe Automotive Group, LLC; Jay Wolfe Used Cars of Blue Springs, LLC

*Plaintiffs - Appellants*

v.

Universal Underwriters Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: September 24, 2015
Filed: December 15, 2015

——————————

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

——————————

BEAM, Circuit Judge.

Jay Wolfe Used Cars of Blue Springs, LLC, along with its managing company, Wolfe Automotive Group, LLC, (Wolfe) appeals the district court's[1] adverse grant of

———————————————————

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

summary judgment in its suit against Universal Underwriters Insurance Company (Universal) seeking coverage.  We affirm.

## I.    BACKGROUND

Wolfe, a Missouri used-car dealership, is insured under two policies issued by Universal.  One policy provides up to $500,000 for indemnity from and defense against suits for damages arising from Wolfe's "wrongful repossession" of an automobile, and this is linked under a separate policy to $25 million in umbrella coverage (we will refer to these linked coverage provisions together as the "umbrella coverage").  One of the policies also separately provides up to $25,000 for costs in defending against suits arising from the sale of an automobile (the "customer complaint defense" provision), subject to both a $2,500 and a $100,000 deductible. Under the policy, Wolfe may be entitled to either the umbrella coverage or coverage under the customer complaint defense provision, but not both.

Wolfe sold a vehicle to Tyrrell and Liane Jackson (the Jacksons), retaining a security interest for loaning them the purchase money.  Wolfe later repossessed and sold the vehicle due to missed payments.  After retaking possession but before the sale, Wolfe sent a notice informing the Jacksons they could request an accounting for a $25 charge, and after the sale it sent a notice charging the Jacksons attorney's and legal fees.  Wolfe sued for the deficiency balance, and the Jacksons counterclaimed on behalf of themselves and similarly situated consumers, alleging Wolfe's pre- and post-sale notices violated Missouri's Uniform Commercial Code (U.C.C.) and the Missouri Motor Vehicle Time Sales Act (MVTSA). Specifically, the Jacksons alleged that the presale notice violated a requirement under the U.C.C. that upon request they be provided with one free accounting and that the notice inform them of that entitlement. Mo. Rev. Stat. §§ 400.9-210(f), -613(1)(D), -614(1)(A).  They alleged that the postsale notice violated the U.C.C. by charging them fees and expenses that were not actually incurred in connection with the sale of the vehicle, id. §§ 400.9-

615(a)(1), -616(c)(4), and that it violated the MVTSA because the attorney's fees were in excess of fifteen percent of the deficiency balance and because the charged expenses were unreasonable. Id. §§ 365.100(2), (4). The Jacksons did not dispute that they were in default and that Wolfe had the right to repossess the vehicle.

Wolfe tendered the Jacksons' counterclaims to Universal for defense and indemnity under the umbrella coverage. Universal refused on the ground that the allegedly deficient notices were not wrongful repossessions as that term is meant in the policy, stating Wolfe was only entitled to coverage under the customer complaint defense provision. Preferring the benefits available under the umbrella coverage, Wolfe sued Universal for a declaration of its rights under the policy, as well as for breach of contract and vexatious refusal to pay. Universal counterclaimed for declaratory judgment in its favor. The district court sided with Universal on cross-motions for partial summary judgment and summary judgment. It reasoned the umbrella coverage only applied to repossession that is itself wrongful, not to wrongful debt-collection practices that may involve but are unrelated to repossession. Wolfe now appeals the district court's grant of summary judgment to Universal.

## II.    DISCUSSION

The central dispute is whether the Jacksons have alleged as injury the wrongful repossession of their vehicle as that term is used in the policy. We review de novo both a district court's interpretation of an insurance policy as well as its grant of summary judgment. Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 879 (8th Cir. 2005). In interpreting an insurance policy, we are bound by state law and thus by the decisions of state courts. Am. Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006). Absent ambiguity, Missouri courts will interpret the language of a policy according to its plain meaning as understood by an ordinary insured of average understanding. Piatt v. Ind. Lumbermen's Mut. Ins. Co., 461 S.W.3d 788, 792 (Mo. banc 2015). Ambiguities,

-3-

however, should be resolved in favor of the insured. Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 534 (Mo. Ct. App. 1996). "Language is ambiguous if it is reasonably open to different constructions . . . ." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. banc 1992). Under Missouri law, the duty to defend, which is broader than the duty to indemnify, is triggered by the possibility of coverage, Piatt, 461 S.W.3d at 792, which is ascertained by comparing the allegations to the policy language. Kirk King, King Constr., Inc. v. Cont'l W. Ins. Co., 123 S.W.3d 259, 264 (Mo. Ct. App. 2003). "Where there is no duty to defend, there is no duty to indemnify." Id. (quoting Am. States Ins. Co. v. Herman C. Kempker Constr. Co., 71 S.W.3d 232, 236 (Mo. Ct. App. 2002)). The burden is on the insured to prove coverage. Tresner v. State Farm Ins. Co., 913 S.W.2d 7, 11 n.3 (Mo. banc 1995). Where, as here, there is no factual dispute, "[t]he court shall grant summary judgment if . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Both parties agree "wrongful repossession" is unambiguous, although they disagree on what that term unambiguously means to an ordinary insured.[2] Wolfe contends the phrase includes not only the physical appropriation of a vehicle but also the procedures required for its sale. It argues the district court erred in equating wrongful repossession to a common law claim for conversion, which led to an overly narrow construction of the policy. Universal counters that wrongful repossession means Wolfe must not have had the right to take the vehicle at the time of repossession, and it argues in response to Wolfe's contrary assertion that the district court did not restrict its interpretation to the elements of conversion.

Wolfe relies primarily on Lou Fusz and Kirk King to support its interpretation. In Lou Fusz, we found that an insured's alleged violation of the Telephone Consumer

---

[2]We note that under Missouri law, it is not the existence of differing interpretations by the parties, but the existence of differing, *reasonable* interpretations, that renders language ambiguous. As we explain, no ambiguity exists here.

-4-

Protection Act (TCPA) was a covered injury under a policy providing liability defense and indemnity. We determined an ordinary insured would interpret the phrases "private nuisance" and "invasion of rights of privacy" to include faxing unsolicited advertisements in violation of the TCPA. 401 F.3d at 881-82. We came to this conclusion in light of the TCPA's legislative history, in which Congress repeatedly described telemarketing as "intrusive," a "nuisance," and a "privacy invasion." Id. (quoting 47 U.S.C. § 227 (Historical and Statutory Notes, re: Section 2 of Pub. L. 102-243) (emphasis omitted)). These descriptions offered some evidence of how an ordinary insured would interpret the language in the policy, whereas the insurer "offer[ed] only technical and restricted legal definitions." Id. at 882. Wolfe asserts that here, too, the district court relied on a technical and restricted legal definition when it looked to the elements of a claim for conversion to determine how an ordinary insured would interpret the policy.

Wolfe relies on Kirk King for the proposition that the retaking of the Jacksons' vehicle and the procedure for its sale are part of an integrated process. In Kirk King, a general liability policy provided coverage for suits for damages from an "'advertising injury' caused by an offense committed in the course of advertising your goods, products, or services." 123 S.W.3d at 264. "Advertising injury" was defined to include copyright infringement. Id. King, the insured, constructed a home and was sued by a copyright holder, who alleged the house infringed his copyrighted plans. Id. at 262. The Missouri Court of Appeals found that because King had followed the standard, construction-industry practice of placing a sign in front of the home as a means of advertising his services, the infringement suit was a covered advertising injury. Id. at 263-65. It reasoned that the act of advertising included the placement of the sign in combination with the construction of the home, and thus the construction occurred "in the course of advertising." Id. at 265-66. Wolfe argues that the requirements of the U.C.C. and the MVTSA are similarly integral components of a lawful repossession.

To begin with, it is clear from the order that the district court did not restrict its interpretation of wrongful repossession to the elements of conversion. Although the district court acknowledged that under Missouri law a claim for wrongful repossession is characterized as a claim for conversion, see Scott v. Twin City State Bank, 537 S.W.2d 641, 642 (Mo. Ct. App. 1976), it "accept[ed] plaintiff's contention that the wrongful conduct in repossessions does not necessarily exactly conform to common law definitions, which are not likely known to prospective insureds." The district court's reasoning was not focused on the precise contours of the term "wrongful" but rather on the fact that it modified the term "repossession." In this regard, Universal's contention that a wrongful repossession necessarily means the debtor must not have had the right to take possession is beside the point.[3] The issue is whether the meaning of "repossession" to an ordinary insured sweeps in the procedures required by statute for disposition of the collateral.

We agree with the district court that it does not. The New Oxford American Dictionary (3d ed. 2010) defines repossess as to "retake possession of (something) when a buyer defaults on payments" and possession as "the state of having, owning, or controlling something." Wolfe has the burden of proving that an ordinary insured would think a repossession extends beyond the retaking of possession of the property yet offers only a bare assertion in support of its position. Given that the term "repossess" and its ordinary definition center on possession, it is difficult to see why an ordinary insured would not understand the repossession to be complete once it regained control of the vehicle. That the repossession of a vehicle and its subsequent disposition are constituent parts of collecting on the Jacksons' debt does not, without more, provide a sufficient basis for concluding an ordinary insured would interpret wrongful repossession in a manner that strays so far from its meaning in common

_____

[3]Nor is it clear this argument is correct. As pointed out during oral argument, a creditor who was within her rights to take possession may very well commit a "wrongful" repossession by breaching the peace while doing so.

usage.[4] Further, <u>Lou Fusz</u> and <u>Kirk King</u> are distinguishable. In <u>Lou Fusz</u>, Congress's descriptions of the occurrence at issue provided at least some indication as to how an ordinary insured would interpret the policy. Wolfe, by contrast, does not offer any evidence indicating an expansive interpretation of wrongful repossession is appropriate. Wolfe relies on <u>Lou Fusz</u> to suggest the district court relied on an overly technical and restrictive legal definition when it limited the meaning of wrongful repossession to the elements of a conversion claim. But as we have explained this is not what the district court did. In <u>Kirk King</u>, the act of advertising King's services necessarily involved the construction of a home, otherwise there would have been nothing to advertise. Here, by contrast, the pre- and post-sale notices were not part of the repossession; they occurred after the repossession was complete and in connection with the sale, a separate event.

Under the plain language of the policy, the umbrella coverage is not available for the injuries alleged in the Jacksons' complaint. Thus Universal is entitled to judgment as a matter of law that it is not under a duty to defend Wolfe from the Jacksons' suit except to the extent such a duty may be provided for in the customer complaint defense provision, and consequently that Universal is not under a duty to indemnify Wolfe should the Jacksons be awarded damages. (That suit is still pending.) Because Wolfe's claims for breach of contract and vexatious refusal to pay

---

[4]Although an ordinary insured, it should be presumed, is not intimately familiar with the U.C.C., it is telling that the U.C.C. treats repossession and disposition as distinct events. <u>Compare</u> Mo. Rev. Stat. § 400.9-609 ("After default, a secured party . . . [m]ay take possession of the collateral . . . [w]ithout judicial process, if it proceeds without breach of the peace."), <u>with</u> <u>id.</u> § 400.9-610 ("After default, a secured party may sell . . . the collateral . . . ."). Moreover, a creditor *may* dispose of the collateral, but it is not required to do so. <u>See</u> <u>id.</u> Thus, under the U.C.C. repossession does not necessarily entail the notice procedures that Wolfe claims form part of the same integrated process.

rest on the success of its declaratory judgment action, we need not address them, nor Universal's remaining arguments, here.[5]

## III.   CONCLUSION

Accordingly, for the reasons stated herein, we affirm the decision of the district court.

_____

[5]Wolfe also contends that Universal anticipatorily repudiated the policy by stating to the district court it would not indemnify Wolfe should judgment be entered for the Jacksons on their counterclaim.  Wolfe provides no citation to the record to support this contention, and in any event this argument fails because we find Universal is not under a duty to indemnify Wolfe.