[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14981
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cv-01334-SDM-TBM

HIGHLAND HOLDINGS, INC.,
d.b.a. Highland Homes, Inc.,

Plaintiff-Appellant,

ROBERT J. ADAMS,

Plaintiff -
Counter Defendant,

versus

MID-CONTINENT CASUALTY COMPANY,

Defendant -
Counter Claimant -
Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 2, 2017)

Before MARCUS, WILLIAM PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

Highland Holdings, Inc., appeals the summary judgment in favor of its insurer, Mid-Continent Casualty Company. Highland sued Mid-Continent for refusing to indemnify Highland after it settled a dispute for its alleged infringement of copyrighted house designs. The district court ruled that Mid-Continent owed no duty to indemnify because Highland could not prove how much it paid to settle any claims covered under its commercial general liability insurance policy. We affirm.

## I. BACKGROUND

In March 2013, Home Design Services, Inc., mailed Highland a letter warning that its Whitney, Owenburg, Casa Key II, Winchester, and Westin house plans infringed copyrights for architectural designs by Home Design. Home Design demanded that Highland "immediately cease and desist the advertising, use, copying, or sale of every one of [the infringing] models." Home Design also requested that Highland produce "all documentation identifying the addresses and homeowner of every one of [the five] Models that [it] constructed, or [was] in the process of constructing or entering into a contract to construct."

In September 2013, Home Design filed in a Florida court a complaint that Highland had "infringed . . . copyrights by advertising, designing, constructing, and participating in the construction of one or more residences which were copied

2

largely or were exact duplicates of" three house plans registered by Home Design. Home Design identified the infringing plans as the Whitney, Owenburg, and Casa Key II. Home Design sought injunctive and actual damages or, in the alternative, statutory damages. In December 2013, Highland sent the complaint to Mid-Continent, which provided a defense.

In June 2014, Highland filed in the district court a complaint for a declaration that it was entitled to indemnification from Mid-Continent. Mid-Continent had issued a commercial insurance policy to Highland that covered an "advertising injury" incurred between July 1, 2006, and July 1, 2007. Mid-Continent agreed to "pay those sums that [Highland] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Section V of the policy defined "Personal and advertising injury" as including an "injury . . . arising out of" the "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" That section also stated that "'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The policy excluded from coverage "'Personal and advertising injury' arising out of the infringement of copyright . . . rights," but that "exclusion [did] not apply to infringement, in your 'advertisement', or copyright, trade dress, or slogan." The policy also excluded any

3

"'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

In April 2015, Highland rejected the defense provided by Mid-Continent and negotiated directly with Home Design. The two companies entered into a settlement in which Highland, without "admitting [any] liability," agreed to pay $650,000 "as full and final settlement of all claims raised or that could have been raised in the Suit, as more particularly described" in Exhibit B to the agreement. Exhibit B listed more than 300 homes that Highland built of the Whitney, Owenburg, Casa Key, Casa Key II, Winchester, and Westin house plans and their sales prices, which ranged from below $100,000 to almost $300,000.

Highland amended its complaint against Mid-Continent to add a claim for breach of contract for its failure to indemnify Highland. Mid-Continent answered and counterclaimed for a declaratory judgment that its policy did not cover any "advertising injury" incurred after the policy period and that it had no duty to indemnify because Highland failed to allocate its damages among covered and non-covered claims. Highland admitted in its reply that it began advertising the Whitney house plan on December 15, 2007, which was after the effective date of the policy. In response to interrogatories, Highland also admitted that "[t]he settlement amount was not apportioned."

4

Mid-Continent deposed Neil O'Toole, personal counsel for Highland, and its executive vice-president, David Joel Adams. O'Toole testified that the settlement "was a negotiated lump sum," which "included an unspecified amount attributable to HDS' claims of injunctive relief" and "all claims of attorneys' fees." He stated that the Westin and Winchester plans "were never a part of the lawsuit," yet they were included in the settlement agreement. O'Toole also testified that Highland did "not build homes until [it had] people who have signed the contract to buy them" and "it almost verges on idiotic that we would have to somehow prove that a person who bought the home looked at the layout before they bought it." O'Toole and Adams acknowledged that the Whitney plan was not covered under the insurance policy. Adams testified that Highland "continued to market" the Casa Key II, Owenburg, and Whitney plans and "to move forward in the case" until September 2014.

After both parties moved for summary judgment, the district court granted summary judgment in favor of Mid-Continent. The district court ruled that Mid-Continent owed no duty to indemnify Highland for the full sum paid because the settlement agreement resolved "all claims" against Highland, not just "advertising injuries." The agreement settled non-covered claims "of [Highland] creating a schematic plan . . . [and] constructing a home based on a copyrighted design" and claims that were excluded from coverage because they involved knowingly

5

causing "advertising injuries" after receiving the cease and desist order. The district court rejected the arguments of Highland that a schematic plan was an advertisement and that buyers invariably saw an advertisement before approving construction. The district court also ruled that Highland could not recover for any claims of "advertising injury" that were covered. The district court explained that the settlement agreement "contain[ed] neither a schedule of amounts allocated to settling each claim nor any other indication of how Highland Holdings and Home Design chose $650,000." The district court ruled that the estimation by Highland "assume[d] that the settling parties assigned the same value to each home" despite the variation in their sales prices; "fail[ed] to account for the many acts[] other than advertising . . . that allegedly infringed Home Design's copyrights"; and "fail[ed] to subtract" non-covered and excluded claims.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Highland contends that it is entitled to indemnification from Mid-Continent. Highland argues that "the 'layouts' or 'schematic plans'" are "advertisements[]

6

because their very purpose was to broadcast [its] product (houses) to the public . . . and attract customers." Highland argues that its entire liability "aris[es] out of" a covered advertising injury. Alternatively, Highland argues that it provided "a straightforward, logical, and simple method of allocating the settlement between damages." These arguments fail.

A schematic plan by itself is not an "advertisement" under the Mid-Continent insurance policy. The Oxford English Dictionary defines "schematic" as a "diagrammatic representation," *Schematic*, *The Oxford English Dictionary* (online ed.), and "plan" as "a drawing, sketch, or diagram . . . showing the layout of a building or one floor of a building," *Plan*, *id.* A drawing that shows the layout of a house does not provide "notice . . . about [the] products or services" provided by a homebuilder. And a schematic plan may be used for more practical purposes than "attracting customers." As stated aptly by the district court, "[a]lthough an advertisement might feature a schematic plan and although a prudent purchaser of a home would review a schematic plan before authorizing construction, a schematic plan . . . is not an advertisement."

Highland failed to establish a causal connection between its infringement of the copyrights for house designs and its advertising that would warrant indemnification for every claim that it settled with Home Design. The insurance policy states that Mid-Continent will indemnify Highland for "damages because of

7

. . . 'advertising injury,'" which is an "injury . . . arising out of" the "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Not all of the damages claimed by Highland were "advertising injuries." That is, not all "the injur[ies] for which coverage [was] sought [was] caused by the advertising itself." *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) (interpreting an insurance policy defining "advertising injury" as "arising out of . . . [i]nfringement of copyright") (quoted in *Hyman*, 304 F.3d at 1191). The settlement agreement resolved claims about "designing" house plans that infringed the copyrights and "constructing, and participating in the construction" of homes that infringed the copyrights. Highland argues that "common sense" and O'Toole's testimony established that "each customer looked at the floor plan before purchasing a home," but reviewing a floor plan is not the same as seeing an advertisement containing a copyright-infringing plan. It is equally plausible that a customer, as the district court stated, "view[ed] the 'layout' of a home" when "consulting Highland Holdings in person or visiting a model home."

That, as Highland argues, "a model home . . . or houses being constructed and after completion[] can be used as advertisements" does not affect our conclusion. "Simply selling an infringing product is not sufficient to satisfy the causal connection." *Hyman*, 304 F.3d at 1192. Highland offered no evidence that it caused "advertising injury" by using its infringing models or houses to market its

8

business like the homebuilders in *Kirk King v. Continental Western Insurance Co.*, 123 S.W.3d 259 (Mo. Ct. App. 2003), and *Mid-Continent Casualty Co. v. Kipp Flores Architects, LLC*, 602 F. App'x 985 (5th Cir. 2015). Those builders caused "advertising injury" by opening model homes, *Kipp Flores*, 602 F. App'x at 992, 994, and by placing signs in front of copyright-infringing houses during their construction, *id.*; *Kirk King*, 123 S.W.3d at 262–63, 265–67. Advertising injury may occur if there are signs identifying the homebuilder that "accompan[y] the home construction," *Kirk King*, 123 S.W.3d at 267, but Highland did not prove that it marketed itself in that manner. Nor did Highland prove, as did the builder in *Kipp Flores*, that its "primary means of marketing its construction business was through the use of [its] homes," 602 F. App'x at 994. It is undisputed that Highland constructed homes that infringed on house designs copyrighted by Home Designs, but "in isolation . . . home construction is not advertising," *Kirk King*, 123 S.W.3d at 265. *See Hyman*, 304 F.3d at 1192 ("[T]he infringement must be committed in an advertisement rather than in the sale of a product in order to be covered."). Highland failed to connect its construction of copyright-infringing homes to its advertising.

Highland failed to prove what amount of its settlement was attributable to the claims of advertising injury that were covered by its insurance policy. Highland "had the burden . . . to apportion damages and show that the settlement, or portions

9

thereof, represented costs that fell within the coverage provisions of the policy."

*See Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 429 So. 2d 779,

780 (Fla. Dist. Ct. App. 1983). Highland proposes to allocate its settlement

payment by dividing it among the number of homes constructed using an

infringing house plan, but its "advertising injury" must necessarily be a lesser

amount. Highland fails to account for reimbursing Home Design for its attorney's

fees or for the advertising injuries that were excluded from coverage for being

knowingly caused after Highland received the cease and desist letter from Home

Design. *See id.* (affirming the denial of damages attributable to claims excluded

under the insurance policy). As the district court explained, Highland also fails to

"account for the many acts . . . such as creating a schematic plan based on a

copyrighted design and constructing a home . . . . that allegedly infringed Home

Design's copyrights." Highland failed to satisfy its burden to determine what part

of the settlement amount was attributable to its covered claims.

The district court did not err by entering summary judgment in favor of Mid-

Continent and denying the motion filed by Highland. Highland failed to prove, as it

was required to do, that each claim that it settled with Home Design was an

"advertising injury" under the Mid-Continent insurance policy. *See E. Fla.*

*Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. Dist. Ct. App. 2005).

And Highland failed to prove what portion of the settlement amount was

attributable to the claims of advertising injury that were covered under its

insurance policy. *See Keller*, 429 So. 2d at 780.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Mid-Continent.